## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                        Plaintiff,            Case No. _____

            v.

                                            **COMPLAINT**

MARYANNE V. OLDENBURG
914 N. 11th Street, Apt, 203
Sheboygan, WI 53081,

                        Defendant.

Comes now the plaintiff, the United States of America, by Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Michael A. Carter, Assistant United States Attorney for said District, and for its cause of action alleges that:

1.      This is a civil action brought by the United States of America under 28 U.S.C. §1345.

2.      The United States seeks to foreclose a reverse mortgage between Maryanne V. Oldenburg and the Department of Housing & Urban Development ("HUD").   For reverse mortgages, payment of the debt is made not by monthly payments, but rather by the sale of the mortgaged premises.

3.       Maryanne V. Oldenburg and Robert A. Oldenburg executed and delivered to Wells Fargo Bank N.A. a Closed-End Fixed Rate (Promissory) Note dated October 5, 2009, attached hereto as Exhibit A.

4.      To secure said note, Maryanne V. Oldenburg and Robert A. Oldenburg executed and delivered to Wells Fargo Bank N.A., its successors and assigns, a Closed-End Fixed Rate Home Equity Conversion Mortgage dated October 5, 2009, attached as Exhibit B.

5.     Said mortgage was assigned to the Secretary of Housing and Urban Development on October 23, 2015.   A copy of the assignment is annexed as Exhibit C.

6.     Maryanne V. Oldenburg and Robert A. Oldenburg also executed and delivered to the Secretary of Housing and Urban Development a Closed-End Fixed Rate Second (Promissory) Note dated October 5, 2009 and a second Closed-End Fixed Rate Home Equity Conversion Second Mortgage dated October 5, 2009 to secure the reverse mortgage.   Copies of the second note and mortgage are attached as Exhibits D and E.

7.     Robert A. Oldenburg passed away on June 30, 2010.   His interest in the property was terminated on February 25, 2011 with the filing of an Application for the Termination of Decedent's Interest and Confirmation of Applicants Interest in Property, a copy of which is annexed as Exhibit F.

8.     A Probate Estate for Robert A. Oldenburg was completed in Probate Court for Sheboygan County, Wisconsin, Case Number 2011PR000039.   On August 9, 2011, the Probate Case was disposed and closed.   A copy of CCAP summarizing the case is attached hereto as Exhibit G.

9.     Under the terms of the above notes and mortgages, default occurred when a borrower died and the property is not the principal residence of at least one surviving borrower. Mrs. Oldenburg does not reside in the mortgaged property, but rather at 914 North 11th Street, Apt. 203, Sheboygan, Wisconsin.   The mortgagee property is vacant.   Due to her default, Notice of Intent to Foreclose was mailed to Maryanne V. Oldenburg on September 19, 2018, a copy of which is attached hereto as Exhibit H.

10.     Maryanne V. Oldenburg owes the Plaintiff under the provisions of the notes, and mortgages a balance of $329,663.51 as of August 24, 2018.   A Statement of Account is attached

hereto as Exhibit I.

11. Plaintiff has made the following payments as permitted by the provisions of said

mortgages, which have become a part of the mortgage indebtedness.

| | |
|---|---|
| Service fee (monthly fee) | $ 3,210.00 |
| MIP (insurance) | $16,021.08 |

WHEREFORE, plaintiff prays that an accounting be taken under the direction of this

Court of what is due for principal and interest on the notes and mortgages and that a decree be

entered as follows:

(a) That the defendant pay to plaintiff the principal of $190,518.78 and interest of

$119,913.65, together with interest from August 24, 2018 at the rate of $54.101 per day

computed as provided in the notes and mortgages up to the date on which the decree is entered,

plus interest thereafter according to law, costs, disbursements, and expenses;

(b) Or in default of such payment, that all legal right, title, and interest that defendant

has in the property described in said mortgage be sold at public sale in accordance with 28

U.S.C. §§2001-2003, inclusive, and that the amounts due to plaintiff be paid out of the proceeds

of the sale pursuant to the lien priority of its mortgages;

(c) That the defendant and all persons claiming or who may claim by, from, or under

it be absolutely barred and foreclosed from all rights and equity of redemption in the property,

(d) That if the proceeds of the sale exceed the sum of money to be paid to plaintiff,

any such excess be deposited with the Clerk of this Court subject to further orders of the Court;

(e) For such other and further relief as is just.


Dated at Milwaukee, Wisconsin this 27th day of November, 2018.


MATTHEW D. KRUEGER

United States Attorney

By    s/Michael A. Carter

MICHAEL A. CARTER
Assistant United States Attorney
Wisconsin State Bar No. 1090041
Office of the United States Attorney
Federal Building, Room 530
517 East Wisconsin Avenue
Milwaukee, Wisconsin   53202
Telephone:   (414) 297-1700
Fax: 414-297-4394
Michael.A.Carter@usdoj.gov

# CLOSED-END FIXED RATE NOTE
## (HOME EQUITY CONVERSION)

FHA Case No. 581-3661922 951

OCTOBER 05, 2009
N2646 PHEASANT VALLEY CT
WALDO, WI 53093

[Property Address]

## 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Lender" means
WELLS FARGO BANK, N.A.

and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated 10/05/09 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not due earlier, are due and payable on JANUARY 28TH , 2084 . Interest will be charged on unpaid principal at the rate of FIVE AND 490/1000 percent ( 5.490 %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month. Solely for the purpose of calculating interest, a payment received by Lender within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
### (A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 6 of this Note.
### (B) Place
Payment shall be made at WELLS FARGO BANK, N.A.

3480 STATEVIEW BLVD. MAC X7802-038

FORT MILL, SC 29715-7203 800-472-3209 , or any such other place as Lender may designate in writing by notice to Borrower.
### (C) Limitation of Liability
Borrower shall have no personal liability for payment of this Note. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. BORROWER'S RIGHT TO PREPAY
A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 10 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;
Second, to that portion of the principal balance representing aggregate payments for servicing fees;
Third, to that portion of the principal balance representing accrued interest due under the Note; and
Fourth, to the remaining portion of the principal balance. To the extent Borrower prepays any outstanding balance under this Note, such amounts will no longer be available to be advanced under this Note.

## 6. IMMEDIATE PAYMENT IN FULL
### (A) Death or Sale
Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or
(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

0111193934

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS WELLS # 940R : 08/08
NMFL #8915WI (OYWI) Rev 11/2008

Wisconsin HECM Fixed Rate Note

Page 1

Exhibit A

**(B) Other Grounds**
Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:
(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;
(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or
(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**
If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**
Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyances of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**7. WAIVERS**
Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**10. RELATIONSHIP TO SECOND NOTE**

**(A) Second Note**
Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**
Payments made by the Secretary shall not be included in the debt due under this Note unless:
(i) This Note is assigned to the Secretary; or
(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.
If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**
Where there is no assignment or reimbursement as described in (B)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by Secretary, notwithstanding anything to the contrary in Paragraph 6 of this Note; or
(ii) Be obligated to pay interest under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraph 2 of this Note or any Allonge to this Note.

(Acknowledgments on following page)

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS WELLS # 95DR : 08/08
NMFL #8915WI (OYWI)

Wisconsin HECM Fixed Rate Note

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

✗ _Mary Ann V Oldenburg_ _____ (Seal)
MARY ANN V OLDENBURG                               -Borrower


✗ _Robert A Oldenburg_ _____ (Seal)
ROBERT A OLDENBURG                               -Borrower


_____ (Seal)
                              -Borrower


_____ (Seal)
                              -Borrower

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS WELLS # 96DR : 08/08
NMFL #8915WI (QYWI)        Page 3

Wisconsin HECM Fixed Rate Note

1888885

SHEBOYGAN COUNTY, WI
RECORDED ON
10/14/2009 03:43PM

ELLEN R. SCHLEICHER
REGISTER OF DEEDS

RECORDING FEE: $31.00
TRANSFER FEE:
EXEMPTION # NA

STAFF ID 3
TRANS # 140412
# OF PAGES: 11

_Closed-end fix Rate_
_Home Equity Conversion_
_Mortgage_

4127S649

Document Number

Document Title

Recording Area

WHEN RECORDED RETURN TO:
Equity Loan Services, Inc.
1100 Superior Ave., Ste. 200
Cleveland, OH 44114
National Recording – FACT

59 010129733

Parcel Identification Number (PIN)

This information must be completed by submitter: document title, name & return address, and PIN (if required). Other information such as the granting clause, legal description, etc., may be placed on this first page of the document or may be placed on additional pages of the document. Note: Use of this cover page adds one page to your document and $3.00 to the recording fee. Wisconsin Statutes, 59.43(2m).
WRDA HB Rev. 1/8/2004

**Exhibit B**

This Instrument was Drafted By: Amanda Johnson
Individual's Title/Name:
WELLS FARGO BANK, N.A.

Individual's Address:
9021 MERIDAN WAY , MAC M6964-012
WEST CHESTER , OH 450690000

When Recorded Mail To:
WFHM FINAL DOCS X2599-024
405 SW 5TH STREET
DES MOINES, IA 50309-4600

Parcel ID Number: 59010129733

# CLOSED-END FIXED RATE
# HOME EQUITY CONVERSION MORTGAGE

_____ [Space Above This Line For Recording Data] _____

**State of Wisconsin**                     FHA Case No. 581-3661922 951

THIS MORTGAGE ("Security Instrument") is given on              10/05/09 . The
mortgagor is ROBERT A. OLDENBURG AND MARY ANN OLDENBURG, HIS WIFE, AS
SURVIVORSHIP MARITAL PROPERTY

whose address is N2646 PHEASANT VALLEY CT , WALDO , WI 53093
                                                             ("Borrower"). This
Security Instrument is given to WELLS FARGO BANK, N.A.
WELLS FARGO BANK, N.A.

which is organized and existing under the laws of THE UNITED STATES
and whose address is
P.O. BOX 11701
NEWARK, NJ 071014701                                 ("Lender"). Borrower
has agreed to repay to Lender amounts which Lender is obligated to advance, including future
advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as
this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's
Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to
Lender: (a) the repayment of the debt evidenced by the Note, with interest and all renewals,
extensions and modifications of the Note, up to a maximum
principal amount of THREE HUNDRED EIGHTY TWO THOUSAND FIVE HUNDRED AND 00/100

(U.S. $ ************382,500.00 ); (b) the payment of all other sums, with interest, advanced
under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the
terms of this Security Instrument; and (c) the

0111193934
First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS# T297: 04/08  NMFL #8807W1 Doc Id: QFWI  Rev. 11/17/2008         Page 1

Wisconsin HECM Security Instrument

performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including amounts described in (a), (b), and (c) above, if not due earlier, is due and payable on JANUARY 28TH, 2094. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in

SHEBOYGAN                County, Wisconsin:

SEE ATTACHED LEGAL DESCRIPTION - EXHIBIT "A"

which has the address of     N2646 PHEASANT VALLEY CT

                                     [Street]

                 [Borrower's Post Office Address, If Different]

WALDO                   WI           53093           ("Property Address");
       [City]                [State]           [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.
2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit, as provided for in the Loan Agreement.
3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALP9# 1Z58; 04/08; NMFL #8807WI Doc Id: QFWI

          Page 2

Wisconsin HECM Security Instrument

restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALP5# TZ99; 04/08  NMFL #5807WI ,Doc Id: QFWI

Page 3

Wisconsin HECM Security Instrument

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

   (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

   (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

   (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

   (ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

   (iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

   (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

   (ii) Pay the balance in full; or

   (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

   (iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within SIXTY DAYS from the date hereof, if permitted by Applicable Law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to SIXTY DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower. If the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower

First American Loan Production Services
© 2006 First American Real Estate Solutions LLC
FALPS# 00TZ 04/06 NMFL #6807Wi Doc Id: QFWi

Wisconsin HECM Security Instrument

Page 4

shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

12. **Lien Status.**

   **(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

   **(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

   **(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

13. **Relationship to Second Security Instrument.**

   **(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

   **(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:
   (i) This Security Instrument is assigned to the Secretary; or
   (ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

   If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

   **(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

      (i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS# 01TZ. 04/08  NMFL: #8607WI  Doc Id: QFWI

Wisconsin HECM Security Instrument

Page 6

(ii) Be obligated to pay interest under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19. Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, Reasonable Attorneys' Fees (as defined in Paragraph 25) and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following**

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS# 02TZ: 04/08  NMFL #6607WI  Doc Id: OFWI

Wisconsin HECM Security Instrument

Page 6

order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Paragraph 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**23. Accelerated Redemption Periods.** If (a) the Property is 20 acres or less in size, (b) Lender in an action to foreclose this Security Instrument waives all right to a judgment for deficiency and (c) Lender consents to Borrower's remaining in possession of the Property, then the sale of the Property may be 6 months from the date the judgment is entered if the Property is owner-occupied at the time of the commencement of the foreclosure action. If conditions (b) and (c) above are met and the Property is not owner-occupied at the time of the commencement of the foreclosure action, then the sale of the Property may be 3 months from the date the judgment is entered. In any event, if the Property has been abandoned, then the sale of the Property may be 2 months from the date the judgment is entered.

**24. Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

**25. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees and other charges, shall be obligatory.

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider ☐ Planned Unit Development Rider

☐ Other (Specify)

(Acknowledgments on following page)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Mary Ann V Oldenburg_ _____ (Seal)
MARY ANN V OLDENBURG                              -Borrower

_Robert A Oldenburg_ _____ (Seal)
ROBERT A OLDENBURG                               -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS# 04TZ: 04/08  NMFL #8557WI  Doc Id: QFWI          Page 8          Wisconsin HECM Security Instrument

—————————————— [Space Below This Line For Acknowledgement] ——————————————

State of Wisconsin

County of _SHEBOYGAN_

This instrument was acknowledged before me on _Oct. 5, 2009_ by _____
ROBERT A. OLDENBURG AND MARY ANN OLDENBURG

_____

_____

_Paul Mees_
(Signature of notarial officer)

(Seal, if any)

PAUL MEES
Notary Public
State of Wisconsin

_Notary_
Title (and rank)

(My commission expires: _1/20/2013_ )

Drafted by: Amanda Johnson
Wells Fargo Bank, N.A.
9021 Meridan Way
West Chester, OH 45069
920-432-7985

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS# JR59: 04/08 NMFL #8607Wi Doc Id: QFWi                Page 9                Wisconsin HECM Security Instrument

**Exhibit "A"**

The following described real estate in Sheboygan County, State of Wisconsin:

Part of the Northwest Quarter (NW 1/4) of the Southeast Quarter (SE 1/4) of Section Thirty-five (35), Town Fourteen (14) North, Range Twenty-one (21) East, more particularly described and set forth as Tract "2b" of a Certified Survey Map recorded as Document No. 1039515, in Volume 5 of Certified Survey Maps, on Page 44, on February 16, 1979.

Together with and subject to a Sixty-six (66.00') foot easement for access and egress to and from said Tract "2b", the centerline of said easement being described as: Commencing at the center of said Section Thirty-five (35), thence South Eighty-nine (89 deg.) degrees Forty-three (43') minutes Zero (00") seconds East Five hundred sixty-six and fifty-nine hundredths (566.55') feet which is the true point of beginning of said easement; thence South Three (03 deg.) degrees Forty-eight (48') minutes Thirty-nine (39") seconds West, Seven hundred (700.00') feet to the point of termination of said easement.

APN #: 59010129733

OLDENBURG
41275649                                    WI

FIRST AMERICAN ELS
MORTGAGE

# ASSIGNMENT

Document Number

**2011712**
**SHEBOYGAN COUNTY, WI**
RECORDED ON
**10/30/2015  9:46 AM**
**ELLEN R. SCHLEICHER**
**REGISTER OF DEEDS**
**RECORDING FEE: 30.00**
**EXEMPTION #**
Cashier ID: 9
PAGES: 2

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
MAC: N9289-016
PO BOX 1829
EAGAN, MN  55121-4400

0111499934

Parcel ID No. 59010129733

FHA CASE NO: 6813561922

THIS IS A STYLE "B" FORM UNDER WIS ACT 110 WITH 3X3 SPACE IN UPPER RIGHT CORNER
Sheboygan, Wisconsin
"OLDENBURG"
Date of Assignment: October 23rd, 2015
Assignor: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA  50328
Assignee: THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT at 451 7TH STREET S.W.,
WASHINGTON, DC  20410

Executed By: ROBERT A. OLDENBURG AND MARY ANN OLDENBURG, HIS WIFE, AS SURVIVORSHIP
MARITAL PROPERTY  To: WELLS FARGO BANK, N.A.
Date of Mortgage:  10/05/2009 Recorded:  10/14/2009  as Instrument No.: 1888885  In the County of Sheboygan,
State of Wisconsin.

Parcel ID No. 59010129733

Property Address: N2646 PHEASANT VALLEY CT, WALDO, WI  53093

Legal:  See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

  KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $382,500.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

  TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

WELLS FARGO BANK, N.A.
On  10- 27-15

By:
 _Bhavdip Chhotalal Chauhan_
Vice President Loan Documentation

STATE OF Minnesota
COUNTY OF Dakota

Yves Akara Kenao

On  10-27-1  before me,  _____, a Notary Public in the State of Minnesota,
personally appeared  Bhavdip Chhotalal Chauhan  , Vice President Loan Documentation, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_Yves Akara Kenao_
Notary Expires:  /  /
 1/31/17

PREPARED BY: WELLS FARGO BANK, N.A.

YVES AKARA KENAO
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2017

(This area for notarial seal)

*LPA*LPAWFEM*10/23/2015 11:34:27 AM*WFEM01WGEMAC0000002000000001387682*WISHEBO*WISTATE_MORT_ASSIGN_ASSN *FAMFEM*

**Exhibit C**

Exhibit "A"

The following described real estate in Sheboygan County, State of Wisconsin:

Part of the Northwest Quarter (NW 1/4) of the Southeast Quarter (SE 1/4) of Section Thirty-five (35), Town
Fourteen (14) North, Range Twenty-one (21) East, more particularly described and set forth as Tract "2b"
of a Certified Survey Map recorded as Document No. 1039519, in Volume 6 of Certified Survey Maps, on
Page 44, on February 16, 1979.

Together with and subject to a Sixty-six (66.00') foot easement for access and egress to and from said
Tract "2b", the centerline of said easement being described as: Commencing at the center of said Section
Thirty-five (35), thence South Eighty-nine (89 deg.) degrees Forty-three (43') minutes Zero (00") seconds
East Five hundred sixty-six and fifty hundredths (566.55') feet which is the true point of beginning of
said easement; thence South Three (03 deg.) degrees Forty-eight (48') minutes Thirty-nine (39") seconds
West, Seven hundred (700.00') feet to the point of termination of said easement.

APN #: 59010129733

# CLOSED-END FIXED RATE SECOND NOTE
## (HOME EQUITY CONVERSION)

RECEIVED BY
CLS-MGC

DEC 2 1 2009

OCTOBER 05, 2009

FHA Case No. 581-3661922 951

N2646 PHEASANT VALLEY CT
WALDO, WI 53093

[Property Address]

### 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Secretary" or "Lender" means the Secretary of Housing and Urban Development or his or her authorized representatives.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated 10/05/09 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not due earlier, are due and payable on JANUARY 28TH , 2084 . Interest will be charged on unpaid principal at the rate of FIVE AND 490/1000 percent ( 5.490 %) per year until the full amount of principal has been paid. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month. Solely for the purpose of calculating interest, a payment received by Lender within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument" or the "Second Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note. Borrower also executed a First Security Instrument and First Note when the Second Security Instrument and this Note were executed.

### 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 6 of this Note.
**(B) Place**
Payment shall be made at the Office of the Housing-FHA Comptroller, Director of Mortgage Insurance Accounting and Servicing, Department of Housing and Urban Development, 451 Seventh Street, S.W., Washington, DC 20410, or any other place designated by the Secretary in writing by notice to Borrower.
**(C) Limitation of Liability**
Borrower shall have no personal liability for payment of this Note. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property").

### 5. BORROWER'S RIGHT TO PREPAY
A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of this Note and then to reduce the principal balance of the First Note.
All prepayments of the principal balance shall be applied by Lender as follows:
First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;
Second, to that portion of the principal balance representing aggregate payments for servicing fees;
Third, to that portion of the principal balance representing accrued interest due under the Note; and
Fourth, to the remaining portion of the principal balance. To the extent Borrower prepays any outstanding balance under this Note, such amounts will no longer be available to be advanced under this Note.

### 6. IMMEDIATE PAYMENT IN FULL
**(A) Death or Sale**
Lender may require immediate payment in full of all outstanding principal and accrued interest if:
(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or
(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**
Lender may require immediate payment in full of all outstanding principal and accrued interest, if:
(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;
(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or
(iii) An obligation of the Borrower under the Security Instrument is not performed.

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS WELLS # 97DR : 08/08
NMFL #8916WI (QZWI) Rev 11/2008

Page 1



**Exhibit D**

**(C) Payment of Costs and Expenses**
If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**
Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyances of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**7. WAIVERS**
Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above listed or at a different address if Borrower has given the Secretary a notice of Borrower's different address.

Any notice that must be given to the Secretary under this Note will be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**10. RELATIONSHIP TO FIRST NOTE**

**(A) Second Note**
Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant this Second Note to the Secretary.

**(B) Relationship of Secretary Payments to First Note**

All payments made by the Secretary shall be included in the debt due under this Note unless:
(i) The First Note is assigned by its holder to the Secretary; or
(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

(Acknowledgments on following page)

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS WELLS # 88DR : 08/08
NMFL #8916WI (OZWI)

Page 2

Wisconsin HECM Fixed Rate Second Note

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

✖ _Mary Ann V Oldenburg_ _____ (Seal)
    MARY ANN V OLDENBURG                                -Borrower

✖ _Robert A Oldenburg_ _____ (Seal)
    ROBERT A OLDENBURG                                -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

**1888886**

SHEBOYGAN COUNTY, WI
RECORDED ON
10/14/2009 03:43PM

ELLEN R. SCHLEICHER
REGISTER OF DEEDS

RECORDING FEE: $29.00
TRANSFER FEE:
EXEMPTION # NA

STAFF ID 3
TRANS # 140412
# OF PAGES: 10

This Instrument was Drafted By: Amanda Johnson
Individual's Title/Name:
**WELLS FARGO BANK, N.A.**

Individual's Address:
WHEN RECORDED, RETURN TO:
*EQUITY LOAN SERVICES*
*1100 SUPERIOR AVENUE, SUITE 200*
*CLEVELAND, OHIO 44114*
*NATIONAL RECORDING - TEAM 1*
*Accommodation Recording Per Client Request*

RECEIVED BY
CLB-MCC
FEB 23 2010

Parcel ID Number: 59010129733

4127-5649 [Space Above This Line For Recording Data]

State of Wisconsin                                    FHA Case No. 581-3661922 951



# CLOSED-END FIXED RATE
# HOME EQUITY CONVERSION SECOND MORTGAGE

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on 10/05/09 . The mortgagor is ROBERT A. OLDENBURG AND MARY ANN OLDENBURG, HIS WIFE, AS SURVIVORSHIP MARITAL PROPERTY

whose                                    address                                    is
N2646 PHEASANT VALLEY CT , WALDO WI 53093

("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W., Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest, and all renewals, extensions and modifications of the Note, up to a maximum principal                                    amount                                    of
THREE HUNDRED EIGHTY TWO THOUSAND FIVE HUNDRED AND 00/100

(U.S. $**********382,500.00 );(b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note. The full debt, including amounts described in (a), (b), and (c) above, if not due earlier, is due and payable on

0111193934

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS # 05TZ : 05/08
NMFL #8808Wi (QGWI) Rev. 11/2008                    Page 1                    Wisconsin HECM Second Security Instrument



**Exhibit E**

*581-3661922*

**JANUARY 28TH , 2084** . For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in **SHEBOYGAN** County, Wisconsin:

**SEE ATTACHED LEGAL DESCRIPTION – EXHIBIT "A"**

which has the address of **N2646 PHEASANT VALLEY CT**

[Street]

**WALDO** **WI** **53093** ("Property Address");

[City] [State] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant, and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS # 06TZ  05/08
NMFL #8808Wi (QGWI)

Wisconsin HECM Second Security Instrument

Page 2

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS # 07TZ : 05/08
NMFL #8808WI (QGWI)

Wisconsin HECM Second Security Instrument

Page 3

Case 2:18-cv-01862-LA   Filed 11/27/18   Page 3 of 10   Document 1-5

this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

**9. Grounds for Acceleration of Debt.**

**(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the Principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property); or

(iii) The Property ceases to be the Principal residence of a Borrower for reasons other than death and the Property is not the Principal residence of at least one other Borrower; or

(iv) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the Principal residence of at least one other Borrower; or

(v) An obligation of the Borrower under this Security Instrument is not performed.

**(b) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

**(c) Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

**(d) Trusts.** Conveyance of Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a Principal residence for purposes of this Paragraph 9.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

## 12. Lien Status.

**(a)** Modification. Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b)** Tax Deferral Programs. Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c)** Prior Liens. Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

## 13. Relationship to First Security Instrument.

**(a)** Second Security Instrument. In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(I)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

**(b)** Relationship of First and Second Security Instruments. Payments made by the Secretary shall not be included in the debt under the First Note unless:

    (i) The First Security Instrument is assigned to the Secretary; or
    (ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

**(c)** Effect on Borrower. Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

    (i) Be required to pay amounts owed under the First Note; or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or
    (ii) Be obligated to pay interest under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

**(d)** No Duty of the Secretary. The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even

Case 2:18-cv-01862-LA     Filed 11/27/18     Page 5 of 10     Document 1-5

though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

(e) **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including but not limited to, Reasonable Attorneys' Fees (as defined in Paragraph 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS # 10TZ : 05/08
NMFL #8808WI (QGWI)

Wisconsin HECM Second Security Instrument

Page 6

the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Paragraph 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

21. **Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

23. **Accelerated Redemption Periods.** If (a) the Property is 20 acres or less in size, (b) Lender in an action to foreclose this Security Instrument waives all right to a judgment for deficiency and (c) Lender consents to Borrower's remaining in possession of the Property, then the sale of the Property may be 6 months from the date the judgment is entered. If the Property is owner-occupied at the time of the commencement of the foreclosure action. If conditions (b) and (c) above are met and the Property is not owner-occupied at the time of the commencement of the foreclosure action, then the sale of the Property may be 3 months from the date the judgment is entered. In any event, if the Property has been abandoned, then the sale of the Property may be 2 months from the date the judgment is entered.

24. **Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

25. **Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees and other charges, shall be obligatory.

26. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider ☐ Planned Unit Development Rider

☐ Other (Specify):

(Acknowledgments on following page)

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS # 11TZ : 05/08
NMFL #8808WI (QGWI)

Wisconsin HECM Second Security Instrument

Page 7

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Mary Ann V. Oldenburg_                           (Seal)
MARY ANN V. OLDENBURG                     -Borrower

_Robert A. Oldenburg_                           (Seal)
ROBERT A OLDENBURG                       -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS # 12TZ  :05/08
NMFL #8808WI (QGWI)

Wisconsin HECM Second Security Instrument

Page 8

----------------------------------------[Space Below This Line For Acknowledgement]----------------------------------------

State of Wisconsin,

County of: *SHEBOYGAN*

This instrument was acknowledged before me on *Oct. 5, 2009* by
ROBERT A. OLDENBURG AND MARY ANN OLDENBURG

_____

_____

_____

(Seal, if any)                    (Signature of notarial officer)
                                  *Paul Mees*

```
┌─────────────────────────────┐
│        PAUL MEES             │
│      Notary Public          │
│     State of Wisconsin      │
└─────────────────────────────┘
```

                                  *NOTARY*
                                  Title (and rank)

                    (My commission expires: *1/20/2013* )

Drafted by: Amanda Johnson
Wells Fargo Bank, N.A.
9021 Meridan Way
West Chester OH 45069
920-432-7985

First American Loan Production Services          Wisconsin HECM Second Security Instrument
© 2008 First American Real Estate Solutions LLC
FALPS # JR60 : 05/08
NMFL #8808WI (QGWI)                    Page 9

**Exhibit "A"**

The following described real estate in Sheboygan County, State of Wisconsin:

Part of the Northwest Quarter (NW 1/4) of the Southeast Quarter (SE 1/4) of Section Thirty-five (35), Town Fourteen (14) North, Range Twenty-one (21) East, more particularly described and set forth as Tract "2b" of a Certified Survey Map recorded as Document No. 1039515, in Volume 5 of Certified Survey Maps, on Page 44, on February 16, 1979.

Together with and subject to a Sixty-six (66.00') foot easement for access and egress to and from said Tract "2b", the centerline of said easement being described as: Commencing at the center of said Section Thirty-five (35), thence South Eighty-nine (89 deg.) degrees Forty-three (43') minutes Zero (00") seconds East Five hundred sixty-six and fifty-nine hundredths (566.55') feet which is the true point of beginning of said easement; thence South Three (03 deg.) degrees Forty-eight (48') minutes Thirty-nine (39") seconds West, Seven hundred (700.00') feet to the point of termination of said easement.

APN #: 59010129733

LDENBURG

41275649                          WI
FIRST AMERICAN ELS
REVERSE MORTGAGE

10



APPLICATION FOR THE
TERMINATION OF DECEDENT'S INTEREST
AND CONFIRMATION OF APPLICANT'S INTEREST IN PROPERTY

**1920523**
**SHEBOYGAN COUNTY, WI**
RECORDED ON
02/25/2011 2:50 PM
**ELLEN R. SCHLEICHER**
**REGISTER OF DEEDS**
RECORDING FEE: 30.00
EXEMPTION #
Cashier ID: 9
PAGES: 2
*Recording area*

| DECEDENT'S NAME ROBERT A. OLDENBURG | DATE OF DEATH June 30, 2010 | | |
|---|---|---|---|
| ADDRESS OF DECEDENT AT DATE OF DEATH N2646 Pheasant Valley Court | CITY WALDO | ST WI | ZIP 53093 |

PRESENTATION OF DEATH CERTIFICATE
I certify that I have viewed a certified copy of the decedent's death certificate.

*Ellen R. Schleicher*                     02-25-2011
REGISTER OF DEEDS SIGNATURE                DATE

THE INTEREST OF THE DECEDENT IN THE PROPERTY NOTED HEREIN IS HEREBY TERMINATED/CONFIRMED UNDER THE FOLLOWING STATUTE: (please check appropriate statute)

☐ s. 867.045 which pertains to real property in which the decedent was a joint tenant, had a vendor's or mortgagee's interest, or had a life estate. (You must provide a copy of the document establishing interest in the real property.)

☒ s. 867.046 which pertains to property of a decedent specified in a marital property agreement; survivorship marital property; or a third party confirmation; or a nonprobate transfer on death as described in s.705.10(1). (You must provide a copy of the document establishing interest in property.)

Presentation of recorded document establishing interest in real estate.

| DOCUMENT # | VOLUME/REEL | PAGE/IMAGE | RECORDS/DEEDS |
|---|---|---|---|
| 1136542 | 1022 | 86 | |

Description of the real estate.                ☒ See Attached

Name and return address:

Darrow & Dietrich, S.C.
P.O. Box 1001
Sheboygan, WI 53082-1001

59010129733

Parcel Identification Number
SEND TAX STATEMENT TO:

Maryanne V. Oldenburg
N2646 Pheasant Valley Court
Waldo, WI 53093

Description of personal property (if any) being transferred.
You may list savings accounts, checking accounts and securities on attached pages. Indicate person(s) receiving property.
DECLARATION: I(We) declare that this document is, to the best of my(our) knowledge and belief, true, correct and complete and is in conformity with the provisions and limitations of the Wisconsin Statutes.

| Name and Address (List all remaindermen/ beneficiaries. If more space is needed, attach pages.) | Applicant's Interest in Property (list spouse, remainderman, beneficiary) | Applicant Signature (Notarized) (Print or type name below signature) | Date |
|---|---|---|---|
| Maryanne V. Oldenburg N2646 Pheasant Valley Court Waldo, WI 53093 | Spouse | *Maryanne Oldenburg* Maryanne V. Oldenburg | 2-23-11 |

This document was drafted by:(print or type name below)

Attorney Dean M. Dietrich

STATE OF WISCONSIN, County of Sheboygan
Subscribed and sworn to before me on:

by the above named person(s):

NOTE: SEE DIRECTIONS. Wisconsin Register of Deeds Association Form HT-110 Website Version 05/2010

Signature of Notary or other person authorized to administer an oath (as per s 706.06, 705.07)
Print or type name:
Title: *Notary Public*

Sheboygan
*February 23, 2011*
Maryanne V. Oldenburg

*Patricia Beske*

*Patricia Beske*
Date Commission Expires: 4/22/12

THIS IS A STANDARD FORM. ANY MODIFICATIONS TO THIS FORM SHOULD BE CLEARLY IDENTIFIED.

2

**Exhibit F**

Attachment to:

**Application for the Termination of Decedent's Interest and Confirmation of
Applicant's Interest in Property**

<u>Description of Real Estate:</u>                    Parcel ID. No. 59010129733

Part of the Northwest Quarter (NW-1/4) of the Southeast Quarter (SE-1/4) of Section
Thirty-five (35), Town Fourteen (14) North, Range Twenty-one (21) East, more
particularly described and set forth as Tract "2b" of a Certified Survey Map recorded as
Document No. 1039515, in Volume 5 of Certified Survey Maps, on Page 44, on
February 16, 1979.

TOGETHER WITH AND SUBJECT TO a Sixty-six (66.00') foot easement for access
and egress to and from said Tract "2b", the Centerline of said easement being
described as: Commencing at the center of said Section Thirty-five (35), thence South
Eighty-nine (89°) degrees Forty-three (43') minutes Zero (00") seconds East Five
hundred sixty-six and fifty-five hundredths (566.55') feet which is the true point of
beginning of said easement; thence South Three (03°) degrees Forty-eight (48')
minutes Thirty-nine (39") seconds West Seven hundred (700.00') feet to the point of
termination of said easement.

Property Address:   N2646 Pheasant Valley Court
                    Waldo, WI 53093

# Sheboygan County Case Number 2011PR000039 In the Estate of Robert A Oldenburg

## Case summary

| Filing date | Case type | Case status |
|---|---|---|
| 02-08-2011 | Probate | Closed |

| Class code description | Responsible official | Branch ID |
|---|---|---|
| Special Administration | Graumann, Sandy | 3 |

## Party summary

| Party type | Party name | Party status |
|---|---|---|
| Decedent | Oldenburg, Robert A | |
| Special Administrator | Oldenburg, Maryanne V | |

## Parties

### Decedent: Oldenburg, Robert A

| Date of birth | Date of death | Sex | Race |
|---|---|---|---|
| 04-1933 | 06-30-2010 | Male | |

**Address**

#### Attorneys

| Attorney name | Guardian ad litem | Entered |
|---|---|---|
| Dietrich, Dean Michael | No | 02-08-2011 |

### Special Administrator: Oldenburg, Maryanne V

| Date of birth | Sex | Race |
|---|---|---|
| | | |

**Address (last updated 02-08-2011)**
N2646 Pheasant Valley Court, Waldo, WI 53093

## Court record

| Date | Event | Court official | Court reporter | Amount |
|---|---|---|---|---|
| 08-09-2011 | Case disposed | Graumann, Sandy | | |
| 08-09-2011 | Order discharging special administrator | Sutkiewicz, Angela W. | | |

| Date | Event | Court official | Court reporter | Amount |
|------|-------|----------------|----------------|--------|
| 08-05-2011 | Special administration - petition for discharge | | | |
| | **Additional text:** | | | |
| | no assets received/disbursed - obtained medical records required per specific power granted | | | |
| | | | | |
| 02-08-2011 | Notice of summary procedures deadline | Sutkiewicz, Angela W. | | |
| 02-08-2011 | Special administration letters issued | Sutkiewicz, Angela W. | | |
| | **Additional text:** | | | |
| | to Maryanne V. Oldenburg. | | | |
| | | | | |
| 02-08-2011 | Order appointing special administrator | Sutkiewicz, Angela W. | | |
| | **Additional text:** | | | |
| | without Notice, with Letters and without Bond. | | | |
| | | | | |
| 02-08-2011 | Consent to serve | | | |
| | **Additional text:** | | | |
| | Maryanne V. Oldenburg | | | |
| | | | | |
| 02-08-2011 | Will filed | | | |
| | **Additional text:** | | | |
| | dated may 5, 1995 (four pages). | | | |
| | | | | |
| 02-08-2011 | Filing fee paid | | | $20.00 |
| | **Additional text:** | | | |
| | 11R 003477 | | | |
| | | | | |
| 02-08-2011 | Petition for special administration | | | |
| | **Additional text:** | | | |
| | filed by Atty. Dean Dietrich. | | | |
| | | | | |
| 06-30-2010 | Date of death | | | |


Privacy - Terms



CERTIFIED MAIL – RETURN RECEIPT REQUESTED

**NOTICE OF INTENT TO FORECLOSE
AND ACCEDLERATE MORTGAGE BALANCE**

September 19, 2018

**MARY A OLDENBURG
ESTATE OF ROBERT OLDENBURG
914 N 11ᵀᴴ STREET, APT 23
SHEBOYGAN, WI 53081**

**PROPERTY ADDRESS:**       **N2646 PHEASANT VALLEY CT
WALDO, WI 53093**
**FHA CASE NUMBER:**       581-3661922
**AMOUNT OF THE DEBT:**   $335,358.29
**PAST DUE AMOUNT:**       $335,358.29
**NAME OF THE CREDITOR:** US DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

Dear **MARY A OLDENBURG AND ESTATE OF ROBERT OLDENBURG,**

The Secretary of the United States Department of Housing and Urban Development is the holder of the first mortgage and note on the above premises.

As of the date of the notice, THE MORTGAGE IS IN DEFAULT STATUS due to violation of (9)(a)(i):

**A Borrower dies and the Property is not the principal residence of at least one surviving Borrower.**

The amount required to pay off the outstanding balance in full by **OCTOBER 19, 2018** is **$338,136.79**. This payment must be in the form of a cashier's check or certified check made payable to the Secretary of Housing and Urban Development (HUD).

All funds MUST BE RECEIVED not later than THIRTY (30) DAYS from the date of this letter, and must be forwarded to:

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
2401 NW 23ᴿᴰ STREET, SUITE 1A1
OKLAHOMA CITY, OK   73107
ATTN: FORECLOSURE DEPARTMENT

If you do not pay the amount specified in paragraph 2 WITHIN 30 Days from the date of this letter or tender a deed-in-lieu of foreclosure as noted in paragraph 4 below, we will accelerate the mortgage obligation (declare the entire mortgage due and payable immediately). We will do this without further demand and instruct our attorney to start foreclosure proceedings

Novad Management Consulting, LLC   • 2401 N.W. 23ʳᵈ Street, Suite 1A1 • Oklahoma City, OK 73107
[P]  (877) 622-8525        [F]   (800) 489-1733

Case 2:18-cv-01862-LA   Filed 11/27/18   Page 1 of 2   Document 1-8

**Exhibit H**



We will consider accepting a deed-in-lieu of foreclosure provided the property is free or can be freed of any liens or encumbrances other than the Secretary-held mortgage.

It is essential that you contact me directly at (877) 622-8525, should you have any questions or for additional counseling assistance.

In addition and if you wish, the Department of Housing and Urban Development offers free counseling through approved counseling agencies. The counseling agencies offer services such as budget management, debt management, and related counseling services. You may take advantage of this service anytime during the entire term of the mortgage. For housing counseling assistance call 1.800.569.4287.

Sincerely,


HECM Housing Counselor
NOVAD Management Consulting

*Esta Carta es muy mportante, si no entiende el contenido de la misma, favor de obtener una traduccion lo antes possible. Para su conveniencia, nuestros consejeros ofrecen sus sericios en Enpanol y con gusto le pueden asistir.*

Novad Management Consulting, LLC  ● 2401 N.W. 23rd Street, Suite 1A1  ● Oklahoma City, OK 73107
[P]  (877) 622-8525        [F]    (800) 489-1733

Case 2:18-cv-01862-LA   Filed 11/27/18   Page 2 of 2   Document 1-8

# Statement of Account

**U.S. Department of Housing and Urban Development**
Office of Finance and Accounting

| HUD Field Office |
| --- |
|  |

| To | HUD/OFFICE OF GENERAL COUNSEL | 1. FHA Case Number 581-3661922 | 2. Account Number 581-3661922 |
| --- | --- | --- | --- |
| | | 3. Mortgagor/Owner MARY A OLDENBURG | 4. Social Security Number XXX-XX-6372 |
| | | 5. Co-Mortgagor ROBERT A OLDENBURG | 6. Social Security Number XXX-XX-XXXX |
| 7. Name of original mortgagor if different from above | | 8. Property Address N2646 PHEASANT VALLEY CT WALDO, WI 53093 | |

## Part 1. General Account Information

| Original Mortgage Amount | Unpaid Principal Balance $190,518.78 | Escrow Balance | Interest Rate 5.490 | Term |
| --- | --- | --- | --- | --- |
| Type of mortgage HECM | Last payment applied | Date | Date of oldest unpaid Interest Installment | |

| Type of Tax | Year | Amount | Date sent to RAD | Date Deducted from Account |
| --- | --- | --- | --- | --- |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**Please Note:** The information provided may change subject to un-collectibles from previous owner or foreclosures of other costs incurred but not posted against the account.

## Part 2. Assumption Information / Bring Current Information

Other mortgage is to be assumed: 1. Remit certified funds to bring account current; 2. Provide a copy of the conveyance document; 3. Provide letter from seller authorizing transfer of escrow funds to buyer (no escrow funds will be refunded); 4. Provide verification of Hazard Insurance coverage.

| Bring Current Amount | |
| --- | --- |
| Principal | $190,518.78 |
| Interest | $119,913.65 |
| Tax Escrow Required | |
| Service Charge | $3,210.00 |
| Late Charge | |
| Tax Advance | |
| Other (specify) MIP | $16,021.08 |
| Interest on Advances | |
| Total to Bring Current as of: 08/24/2018 | $329,663.51 |
| Current Monthly Payment Principal and Interest | |
| Tax Escrow | |
| Service Charge | |
| Total Monthly Payment See back of page if mortgage is 235 | |

## Part 3. Payoff Information

| Principal Balance | $190,518.78 |
| --- | --- |
| Interest Due | $119,913.65 |
| Service Charge | $3,210.00 |
| Late Charge | |
| Returned Check Charge | |
| Advance Amount | |
| Tax Escrow Applied | |
| Other (specify) MIP | $16,021.08 |
| Interest on Advances | |
| Taxes Paid but Not Posted | |
| Total Payoff Amount as of: 08/24/2018 | $329,663.51 |
| Per Diem Service Charge | |
| Per Diem Interest | $54.10 |

| Prepared by ALYSSA WARSTLER | Title CASH ANALYST | Date 08/24/2018 |
| --- | --- | --- |

I hereby certify that the above is a true and correct statement of the unpaid balance due on the Note and Mortgage (or Deed of Trust) identified above and held by the Secretary of the U.S. Department of Housing and Urban Development.

**Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

| Certified by KAYE JAMES | Title CASH MANAGEMENT | Date 08/24/2018 |
| --- | --- | --- |

form HUD-698 (1/89)

Exhibit I

**Sensitive Information:** The information collected on this form is considered sensitive and is protected by the Privacy Act. The Privacy Act requires that these records be maintained with appropriate administrative, technical, and physical safeguards to ensure their security and confidentiality. In addition, these records should be protected against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom the information is maintained.

**If the Mortgage is receiving subsidy**

Anniversary date

Date of last recertification

Monthly subsidy

Mortgagor's payment

Full mortgage payment

**Affidavit as to Status of Account**

State of OKLAHOMA

County of OKLAHOMA

On this 24 day of (mm/yyyy) 08/2018 ,

personally appeared before me, the undersigned attesting officer, HEATHER CAMPBELL ,

who being sworn on oath, says that he/she is the LOAN SERVICING MANAGER

of the Department of Housing and Urban Development, a duly constituted agency of the United States of America, that he/she is duly authorized to make this affidavit; that the foregoing statement was prepared from the books and records of the Department of Housing and Urban Development on 08/24/2018 , and that affidavit has cusody of the said books and records and to the best of his/her knowledge and belief the foregoing statement correctly reflects the status of the account as of 08/24/2018 .

Sworn and Subscribed before me this 24 day of 08/2018

Notary Public

**KENZIE MCCRARY**
Notary Public
State of Oklahoma
Commission # 18003568  Expires 04/09/22

form HUD-698 (1/89)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

Place an X in the appropriate box:   ☐ Green Bay Division         ☐ Milwaukee Division

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| | |

| (b)  County of Residence of First Listed Plaintiff _____ <br> (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____ <br> (IN U.S. PLAINTIFF CASES ONLY) <br> NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE <br> LAND INVOLVED. |
|---|---|
| (c)  Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☒ 1  U.S. Government
    Plaintiff

☐ 2  U.S. Government
    Defendant

☐ 3  Federal Question
    (U.S. Government Not a Party)

☐ 4  Diversity
    (Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place <br> of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place <br> of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a <br> Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment <br>    & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted <br>    Student Loans <br>    (Excl. Veterans) <br> ☐ 153 Recovery of Overpayment <br>    of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product <br>    Liability <br> ☐ 320 Assault, Libel & <br>    Slander <br> ☐ 330 Federal Employers' <br>    Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product <br>    Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle <br>    Product Liability <br> ☐ 360 Other Personal <br>    Injury | **PERSONAL INJURY** <br> ☐ 362 Personal Injury - <br>    Med. Malpractice <br> ☐ 365 Personal Injury - <br>    Product Liability <br> ☐ 368 Asbestos Personal <br>    Injury Product <br>    Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal <br>    Property Damage <br> ☐ 385 Property Damage <br>    Product Liability | ☐ 610 Agriculture <br> ☐ 620 Other Food & Drug <br> ☐ 625 Drug Related Seizure <br>    of Property 21 USC 881 <br> ☐ 630 Liquor Laws <br> ☐ 640 R.R. & Truck <br> ☐ 650 Airline Regs. <br> ☐ 660 Occupational <br>    Safety/Health <br> ☐ 690 Other | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal <br>    28 USC 157 <br><br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 840 Trademark | ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and <br>    Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 490 Cable/Sat TV <br> ☐ 810 Selective Service <br> ☐ 850 Securities/Commodities/ <br>    Exchange <br> ☐ 875 Customer Challenge <br>    12 USC 3410 <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 892 Economic Stabilization Act |
| | | | **LABOR** | **SOCIAL SECURITY** | ☐ 893 Environmental Matters <br> ☐ 894 Energy Allocation Act <br> ☐ 895 Freedom of Information <br>    Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 710 Fair Labor Standards <br>    Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt.Reporting <br>    & Disclosure Act <br> ☐ 740 Railway Labor Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. <br>    Security Act | ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) | |
| ☐ 210 Land Condemnation <br> ☒ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ <br>    Accommodations <br> ☐ 444 Welfare <br> ☐ 445 Amer. w/Disabilities - <br>    Employment <br> ☐ 446 Amer. w/Disabilities - <br>    Other <br> ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate <br>    Sentence <br> **Habeas Corpus:** <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition | **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 463 Habeas Corpus - <br>    Alien Detainee <br> ☐ 465 Other Immigration <br>    Actions | **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff <br>    or Defendant) <br> ☐ 871 IRS—Third Party <br>    26 USC 7609 | ☐ 900 Appeal of Fee Determination <br>    Under Equal Access <br>    to Justice <br> ☐ 950 Constitutionality of <br>    State Statutes |

## V.  ORIGIN   (Place an "X" in One Box Only)

☒ 1  Original
    Proceeding

☐ 2  Removed from
    State Court

☐ 3  Remanded from
    Appellate Court

☐ 4  Reinstated or
    Reopened

☐ 5  Transferred from
    another district
    (specify)

☐ 6  Multidistrict
    Litigation

☐ 7  Appeal to District
    Judge from
    Magistrate
    Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

| VII.  REQUESTED IN <br> COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION <br> UNDER F.R.C.P. 23 | DEMAND $ 329,663.51 | CHECK YES only if demanded in complaint: <br> JURY DEMAND:    ☐ Yes   ☒ No |
|---|---|---|---|

| VIII.  RELATED CASE(S) <br> IF ANY | (See instructions): | JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| | s/Michael A. Carter |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

     (b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

     (c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**     **Nature of Suit**.  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.     Example:     U.S. Civil Statute: 47 USC 553
                                 Brief Description: Unauthorized reception of cable service

**VII.**     **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases**.  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.